Next case is in Ray Lacher, Pamela Lacher appearing pro se, Matthew L. Green appearing for Appalese. Okay, are both counsel by zone? Just so I understand.  Okay. Miss Lacher, do you want to reserve a little time here? I like that seven minutes from counsel before. How long? Seven.  Okay. You got seven. Okay. Go ahead. Okay, Your Honor. So I've been here before. And I've learned a lot from this court. Actually, I think the basis for why I'm here today actually goes back to this court's comment to me back in the first time with the Lacher v. State Bar case, where twofold. One is we were talking about the contempt. And two, we were talking about jurisdiction comes before merits. And I know the court knows that I filed something about the jurisdiction issue. I did file a motion originally to consolidate all my cases. Right now in the Ninth Circuit is the court's previous ruling in the Lane v. Lacher case. I appealed the court's order. I filed an emergency motion regarding the jurisdiction issue. If the court recalls, there was a footnote by the court that I didn't properly raise the issue, which seems to be subject matter jurisdiction. Which brings me here first, that I think we have to get past jurisdiction before we can ever get to the merits. Well, can I interrupt you? It's your appeal. If you want to dismiss it for lack of jurisdiction, feel free. No, that's not what I was suggesting, Your Honor. I was suggesting that there's a divestiture issue. Because the issue, as I understand it under Griggs, is when the issue is exactly the same or the ruling that the court might make impacts the issue that's up in the higher court, that the court can't rule on those issues. And so right now the issue before the Ninth Circuit is whether or not, and all of these cases rely, as bankruptcy does, on in-rem jurisdiction and on the debt itself. That same debt is being looked at by the Ninth Circuit. That same debt and the satisfaction of that debt, which is now, I didn't tell the court because there was a ruling a couple days ago and some briefing where the creditors have actually admitted that the underlying base debt was satisfied. One of the issues we're going to get to today is to what extent this is about a debt versus a whole bunch of other actions the courts have taken. So you can certainly make that argument and you can reserve it, but you've only got 15 minutes, so use it any way you want, okay? Then I will move on because it sounds like I take the court seat like other counsel did. No, no, it's your time and you use it any way you want, but there's some serious stuff to talk about here and you go ahead. I'd rather talk about the serious stuff.  Okay. At this point. You bet. Okay. And it sounds like the court has questions, so rather than me ramble about the serious stuff, I'd like to address what the court would like to hear. Well I think what we're struggling with, and I think we've struggled with this in the past, is whether this is solely about a debt. I think that your framing of this, and I use that word with enormous respect because that's, you know, I often say that the question is more important than the answer sometimes because once you get the right question, the answer is right there, right? So in your mind, this is all about a debt, and I think your worthy adversary would say, and I think the trial court determined it was about more than that, that there were other disciplinary proceedings going on, and those had a purpose that wasn't about making sure that the lanes get their money. So I know in your mind it's all connected, but what I think you're going to have to convince us is that's right, as opposed to there's a whole other question here about what the State Bar did, what the California Supreme Court did, the timing of that from your mind, and why those things add up to violations of the automatic stay, violations of the discharge injunction, and a 525 violation, when in our view, none of those necessarily turn on the debt. So that's where we need your help.  That's fine, Your Honor. Yes, I guess. I mean, I'm making sense, right? Because we're talking about the same issue, right? I believe we are.  In my mind, it all, as you say, my mind, it all relates to the debt. And the reason I say it all relates to the debt is this all started with, prior to the contempt, which is the subject of this particular proceeding, prior to that, there are, and I think it's part of the record, there are a number of cases in which the State Bar did   a record, I don't know, six, seven closing letters, a client security fund ruling, all saying that this is a private debt, there's no misconduct, that there's insufficient evidence of misconduct. What turned this into a misconduct case is this contempt judgment, which is what you and I talked about way back the first time it happened. Oh, yeah. Uh-huh. I'll never forget that. I actually learned a lot from this court. Okay. And so I went back and looked at that. And so what this contempt turned on, for starters, and where I think Ninth Circuit law, I mean, I think it's the same thing.       that I never satisfied the debt, which now has been completely obliterated in all their briefs, and I think that's attached to my 801-4 notices, in all their briefing and everything else, they've admitted that the small claims was satisfied 20 million years ago, that the superior court judgment, the base judgment, was satisfied by a cash deposit I made on the appeal, which basically meant that I appealed with, I want to say, proper means, and that if I lost, which I did, the money would go to satisfy the debt. Can I interrupt to ask you a question, make sure I understand something? The question of the dischargeability of the debt between you and the Lane's is still being, there's no final judgment on that, right? That's an issue in the Ninth Circuit relating to the subject matter jurisdiction issue. Okay. Well, were you able to, I assume if you think there's no debt, you were arguing there why we worried about A6, there ain't no debt, right? So that can all get decided there. Okay, I got you. That's correct. Okay. And the court knows that Ms. Lane is actually not there anymore, or at least she's removed herself, although that's- Okay. Okay. And Mr. Lane is fighting to say that he owns the debt to see if he has constitutional standing, which is why I was talking about-  Okay. Let's go back to the contempt. That contempt wasn't brought about by the court because I engaged in misconduct. It was a coercive civil contempt specifically brought about by the creditor, and the way I could get out of that contempt would have been to just pay the debt and provide documents that I didn't have or which violated my ethical duties. For example, one of the orders was for me to turn over my monies in my client trust account to see if the court could look at that money and determine whether the client would get it, I would get it, or creditors would get it. The court ordered me to turn over confidential settlement documents. Whether I had them or not, if the court looks at the actual orders, which are part of the record, nobody ever cared whether I had them or not, and creditors' counsel is the one that brought this, like Yellow Express. This is a pecuniary ploy brought about by creditors specifically for the purpose of coercing me to pay a debt, which I maintain I not only paid already and don't owe. Under the satisfaction, that contempt order would have been void, and I would never have had any duty to obey that order. Let's assume I did have a duty to obey that order.  There's no question, but that order's final, right? The contempt order's final? That's not true, Your Honor. Under CCP 128B, it's not final unless I was given three-day judicial stay. Oh, that's an argument. Okay. I remember that. If I were a lawyer in all this, because if I were a straight debtor and every order is not a lawyer, every single one of them, in fact, the contempt is directed at me as a debtor. If I was a debtor under our rules of professional conduct, Business and Professions Code 6103, Malteman v. State Bar says I don't violate those court orders because they stay out of my personal business, and that is what the California, I mean, the Client Security Fund said is this is a personal debt. This is not something that they would ever pay. It's a private bill, and so all these orders I'm alleged to have violated, all the contempt and all the orders to pay and turn over documents, one, there's no evidence that I ever did any of this. There's no transcript, no witnesses. It was just by creditor's counsel, who, by the way, if you were to look him up, was disciplined for his fraud on the court and misrepresentations from other people. Okay. Why don't we pause right about there? You're within your seven minutes, and if counsel's going to move to strike that, now's a good time to let them do it. Okay? Thank you. So let's hear from the appellee. May it please the court. Matthew Green on behalf of the Superior Court Appellees. Just to take a step back here about who we're dealing with. It's the Superior Court, it's Judge Cayetti, and it's the Superior Court's general counsel. Neither of these appellees were not the lanes, were not the creditor, they're not the state bar. They're completely separate from both of those respective parties. Yeah. Let me, can I just say, I understand. I think, I directed Ms. Locker because I thought the fundamental disagreement we had was whether this was all about a debt or not, and I wanted to let her to get, I want to give her a chance to get those arguments out. I agree with everything you're saying. We're going to get to a level where we're talking about who the parties are here, and that does affect things significantly. Go ahead. Sure. So just, the Superior Court appellees, they have no business being dragged into these bankruptcy proceedings. The only reason that appellant has involved them is she wants them to withdraw the Superior Court's reporting in 2021 to the state bar of the contempt judgment against her, which the Superior Court was obligated to do under the California Business and Professions Code. Appellant erroneously believes that the Superior Court can somehow rescind this notice to the state bar, which again occurred five years ago, and that such rescission will somehow unwind the state bar's disciplinary proceedings against her. Well, let alone obligate the state bar to do anything, right? Correct. Yeah. That would have absolutely no effect on it. I think it's your point, Judge Lafferty. The reporting of the contempt judgment to the state bar is completely distinct from the state disciplinary action that was filed against appellant back in 2022. A state bar proceeding does not commence until the state bar files a notice of disciplinary charges. So it's completely separate from what the Superior Court's appellee's alleged involvement is here. Withdrawing the notice of the contempt judgment to the state bar will have absolutely no impact whatsoever on the disciplinary action. In other words, it would be an entirely idle act. The distinction between the reporting of contempt judgment to the state bar and the state bar disciplinary act proceedings also undermines all of Ms. Lafferty's claims against Superior Court appellees. In her separate proceeding against the state bar, appellant argued the state bar's disciplinary action itself violated the automatic stay, violated the discharge injunction, and was discriminatory. Not only did the panel reject all of these arguments previously, but the panel expressly found them to be frivolous repeatedly. So the Superior Court appellee's conduct is not just one step removed from the state bar proceeding. It is multiple steps removed from the state bar proceeding. Ms. Excuse me. Appellant's arguments with respect to the Superior Court appellees are therefore even more frivolous than they were when they were made with respect to the state bar. So and just to address Judge Lafferty's comment, appellant is not being disciplined for the contempt judgment. She's being disciplined for her underlying disobedience of court orders, her failure to report to the state bar, her prosecution of a meritless appeal, and her commingling of climate trust funds. Completely separate issues have nothing to do with the debt, and that is spelled out repeatedly in detail in the panel's prior decision. And with that, Your Honors, I submit. Okay. Judge Nieman, any questions?  Judge Spraker? No, thank you. Okay. We're back to being judges. I have nothing further. Thank you very much. Okay. Ms. Locker, you got a little under seven minutes. Yes, Your Honor. First of all, I think the misconception is that I've been disciplined. A state bar court recommendation is not a discipline. It is a recommendation just that. It has no judicial findings. It's not afforded collateral estoppel. General counsel has now admitted in the Ninth Circuit that there is no evidence in the record of findings of misconduct by me, by this court, and this court can't make those findings as general counsel has argued. This court can't usurp the power of the Supreme Court. Well, this court wouldn't make any findings in any event, right? We wouldn't. Correct. Yeah. What we're here to figure out is was there a colorable claim before Judge Latham with respect to 362A1 and A6, with respect to 524, with respect to 525, based on what you believe to be the superior court and a particular judge's obligation to rescind a report that she was obligated to make per the California rules of court. And that's your interpretation of 362, 524, and 525. The bankruptcy court didn't agree with any of those arguments. And that's where you are. So tell us why that was a mistake. Okay. First, Your Honor, though, I think it's important to make clear that the bankruptcy court's findings and this court's published opinion presume that I've already been disbarred and that the recommendation, which is now a legal nullity under People v. Ford because of the Supreme Court's remand without affirmance. So all of the findings that say I engaged in all this misconduct, they don't exist anymore on the remand because that is the law when it's remanded without affirmance. So going backwards, all these facts that say I had a duty to report it, under the business and professions court, I had no duty to report something if I was a private litigant and it was purgeable. And if I had paid it and purged it because I had the ability to pay it and didn't bankrupt it and now satisfied the bankruptcy, I mean, by bankruptcy, satisfied the purge element, there would be nothing to report. Just for starters, in answer to the court's question, the court never applied any standards. The court applied this, that ruling and across the board. The court assumed that the Superior Court was acting like a judge. She isn't acting like a judge under the business and professions code. If she didn't witness the event, seemingly did something wrong as a lawyer and had a duty to report it. She found the order in the file. She had no personal knowledge of it. The statutes actually say without that, she's not the one with the duty to do so. So that's- Well, let's pause there. There's a whole bunch of things going on in that statement, okay? I mean, one is that she's not acting as a judicial officer. Does that mean she's acting in an admin capacity? Because I don't see that. How is she acting in an- how is that an admin capacity? That's what the case law says. It's a ministerial duty. She's not acting like a judge. But even if we- we don't have to go there. We don't have to go there because this court's published opinion says if you are a government unit, which a court is, that you are bound by the same rules that the state bar would be bound by. They're bound by- you have to do the 362B4 analysis, which they say doesn't exist. The court applied- Well, let's go back. Okay, we're talking about what a judge did now in the first instance several years ago before bankruptcy was even in your mind, okay? That couldn't have been a violation of the state, right, by itself? I'm not arguing that, Your Honor. It would be like a warrant that issued for my arrest because I didn't pay a debt and I declared bankruptcy. I think it's the Escanos case that says if the person then goes and gets arrested because the person who got the warrant issued didn't rescind the warrant, that's a violation and an affirmative duty to get that back. That's what I'm arguing. I'm arguing Escanos, Inmate Stewart, they apply, not Fulton. This court said a license is not property of the state. Fulton is a property thing. It did not- it applied Fulton. Fulton doesn't exist. It doesn't- it has nothing to do with this. The question is, is it a continuation of the- is it a continuation of proceeding? It is a proceeding if it's a judicial act. Well, I'll just say I think another way to look at this is if the rules require that a judge make a report, that's all they say and you don't have to agree- okay, but let's just say for fun that's what was required. How is that a continuation of anything? What's continuing there? Well, that's the problem is you can't be immune under 362B4 if you're not acting in that capacity and it's a pecuniary interest. Under the Dingley- Well, let's stop for a minute. What is the Superior Court doing at all? The Superior Court made a report and recommendation. I'm sorry, made a report. I'm going to use our bankruptcy concepts here. I shouldn't. At that point, it was in the hands of the State Bar Review Court and it was in the hands of the California Supreme Court, wasn't it? I disagree, Your Honor. How come? The Supreme Court remanded because there are questions. It was not in the hands of the State Bar. I mean, it is, but the State Bar took a report from a judge who was required to sign under penalty of perjury. I have personal knowledge and I would and could testify that it took 20 years worth of closing letters- What personal knowledge does she need that an order was issued with contempt? The order is the order. It's justified to its facts. But the order is the order, isn't it? I'm sorry, what? The order is just the order. She doesn't have to make findings about the order. No, in California law, it has to be supported by evidence, witnesses. I had a right to- None of that happened. It was a critter who brought a proceeding to force me to pay a debt I already paid, turned around to the judge, and then got a contempt order without any of the protections that the law requires. And I was a personal debtor, not a lawyer. Isn't that a fight you want to have about the contempt order and not about what somebody told the State Bar? Well, I'm not having a fight about what she told the State Bar. I'm having a fight- Yeah, you are. You're telling the court that it was wrongful in the first place or not excusable in the first place for her to do it and that somehow she had an obligation to rescind it. I didn't say she had an obligation to rescind it. The self-executing 524 made all the orders void because I have a presumptive discharge. She had a duty to honor that, not set a hearing to discuss it. She had no immunity from that. She had to comply with the bankruptcy. She had affirmative duty to actually take back the warrant for my arrest. What they did with it would be another story, but they relied on the fact that she had evidence that for 20 years and 57 days before filing charges, they had zero. I got a closing letter. It was her report, and when you read the State Bar court rec, it actually says it was based on her report that they brought these charges. Absent that, they had none. So this is based on her saying, hi, I can testify under oath. I would and could because I have personal knowledge of it. And she had to testify that I was acting like a lawyer, and she knew about it. None of this was as a lawyer. And so she basically set the warrant and got me arrested, and I sit in jail right now instead of having a license suspension. And under response, you wouldn't say that that was correct. You're just saying, well, because it's the State Bar that somehow takes this out of the picture, it's no different than the jail cell. I'm sitting in jail because of a warrant that was issued for my arrest that she refused to rescind, which was an improper warrant because she had no knowledge of it. And that's a violation of the affirmative duty law. And that's probably a good place to stop. We're about a minute over our time.  Okay. All right. Thank you, Ms. Locker. I appreciate the passion with which you argue your positions. Okay. Thanks to both counsel. Matter is submitted. We'll get you a written decision as soon as we can. Okay? Thank you very much. Thank you. Thank you. And I think that concludes our calendar. We're adjourned?  Thank you. Thank you. All rise. The court is in recess.
judges: Lafferty, Spraker, and Niemann